UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                       NO: 09-171

JAMAL DERRICK HUDSON                         SECTION: R


### ORDER AND REASONS

Jamal Derrick Hudson was indicted for conspiracy in violation of 18 U.S.C. §§ 1029(a)(2), 1344 and 371, access device fraud in violation of 18 U.S.C. §§ 1029(a)(2) and 2, and bank fraud in violation of 18 U.S.C. §§ 1344 and 2.[1]  The Government alleges that Hudson participated in a conspiracy to obtain wireless cellular telephone equipment and services from Alltel Communications, Inc. ("Alltel") through the use of identity, access device, and bank fraud with a resulting loss to Alltel of approximately $171,000.  The Government relied on information obtained pursuant to wiretaps conducted by Alltel to charge Hudson with these crimes.  Hudson now moves to suppress evidence obtained in the course of those wiretaps on the grounds that Alltel violated Title III of the Omnibus Crime Control and Safe Street Act, 18 U.S.C. 2510, *et seq.*, because: (1) it was acting as a government agent and therefore did not satisfy the private

---

[1]    R. Doc. 66.

carrier exception under Section 2511(2)(a)(i) of the statute; and (2) the scope of the wiretap was unreasonable.[2]

The Court held a suppression hearing on September 8, 2011, at which it received evidence on the circumstances under which Alltel wiretapped phones used by the defendant.  Based on the evidence received at the hearing, the Court determines that the wiretap was legal under the private carrier exception of Section 2511(2)(a)(i) of Title III because Alltel was not acting as an agent of the government and the scope of the wiretap was reasonable.  Accordingly, the Court DENIES Hudson's motion.

**I. Background**

At the suppression hearing, the Court heard the testimony of Robert Davis and Agent Michael Lavergne.  Davis worked as the investigations manager at Alltel for six years and oversaw the investigation and the wiretaps at issue here.  Lavergne is a Special Agent with the United States Secret Service who is the assigned case agent for this matter.  Davis testified that in September of 2003, Alltel detected that fraudulent accounts were being activated through its Little Rock, Arkansas call center. He explained that the four accounts suspected to be fraudulent each opened multiple lines of service and shipped cell phones to the greater New Orleans area.  In response to the suspected

---

[2]     R. Doc. 55.

2

fraud, Alltel located the four individuals whose names, social security numbers and credit cards or bank information were used to open these accounts (all residents of California) in order to confirm that they had not authorized service activation.  Davis stated that after Alltel received fraud affidavits from these four individuals, Alltel began to intercept phone calls made on the phones connected to the accounts.  Davis explained that the purpose of the intercepts was to identify the perpetrators of the fraud in order to protect Alltel's financial interests.  He indicated that Alltel could have deactivated the fraudulent phone lines, but this would have been a stopgap measure because the perpetrators would simply activate more fraudulent accounts. Davis testified that identifying the perpetrators was necessary to stop the financial losses to Alltel.

Davis stated that Alltel monitored phones connected with this conspiracy from September 2003 until March 12, 2004.  Davis testified that the monitoring of what later turned out to be the phone used by Hudson lasted for a much shorter period of time, from January 20, 2004 to March 12, 2004.  Davis stated that from September 2003 to January 20, 2004, Alltel's fraud group intercepted calls on approximately fifteen different unlawfully obtained cell phones believed to be part of the same scheme. Davis testified that Alltel determined that most of these phone lines were end-users, and the intercepts of these phones did not

help it identify the individuals responsible for activating the
fraudulent accounts.  Davis stated that once Alltel concluded
monitoring a phone (as, for example, when it determined that the
monitored party was an end-user), Alltel deactivated the phone's
service.  Davis testified that around January 20, 2004, Alltel
identified the user of a cell phone activated under the name
Robert Armstrong as the individual likely to be causing the
activations.  It was later determined, though not by Alltel, that
Jamal Hudson was the user of this phone.  From January 20, 2004
to March 12, 2004, Alltel's fraud group intercepted calls from
Robert Armstrong's number.  Davis indicated that the purpose of
monitoring this phone line was to fully identify the "ringleader"
of the operation, the other individuals involved in the scheme,
and the victims.

Davis described Alltel's method of monitoring as follows:
all of the calls made on the target cell phone were recorded onto
a compact disc.  When the monitors arrived at work, they would
download the previously recorded calls and listen to the
conversations that were pertinent.  Davis testified that the
monitors stopped listening to a call if they determined that its
contents were not relevant.  Davis stated that the recordings
from Robert Armstrong's phone revealed that the cell phone user
was a male who identified himself as "Kelly", "Cali" or "Mozel."
Davis testified that the male did not use his real name when

speaking on the phone, and chastised another caller for referring to him as Jamal on the phone.  Davis also noted that the intercepts showed that the speaker regularly used other people's identities in an attempt to activate wireless service or restart interrupted service with Alltel and other wireless providers. Davis testified that in total, Alltel discovered approximately sixty-five fraudulent telephone accounts and 284 fraudulently purchased cell phones linked to the scheme.  Davis stated the monitoring enabled Alltel to fully identify six people involved in the conspiracy, but Alltel was unable to identify the "ringleader" by name.  As a result, Alltel decided to stop its investigation and seek the assistance of law enforcement.  Davis testified that Alltel did not seek assistance from the government earlier because it could not fully identify the individuals involved in activating the phones or stealing identification information.

Davis testified that he first contacted the Secret Service Office on March 10, 2004.  On that date he spoke to Agents Keith Polozola and Darren Lake.  Davis indicated that on March 12, 2004, he set up a meeting with Agents Polozola and Lake, which took place on March 15, 2004.  Davis testified that Alltel terminated all intercepts in its investigation on March 12, 2004, before Davis met with the Secret Service.  Davis was specifically asked if he had contact with law enforcement before March 10,

2004, and testified that he did not.  Davis explained that when
he met with Secret Service Agents Polozola and Lake, he brought
them a written report of Alltel's findings, summaries of the
intercepted calls and the recordings of all of the intercepted
calls.  Agent Lavergne confirmed that the Secret Service first
received information related to the investigation on March 10,
2004, when Davis contacted them.  In addition, Lavergne testified
that no secret service personnel took part in the interception of
any calls.

Hudson moved to suppress the cell phone conversations Alltel
recorded on the grounds that they were obtained illegally and
supplied to law enforcement in violation of Title III.  The
government argues that Hudson does not have standing to challenge
the intercepts.  The government also argues that the intercepts
are admissible because Alltel was acting not as a government
agent, but to protect its own interests under the carrier
exception in Title III.

## II. Discussion

Title III of the Omnibus Crime Control and Safe Streets Act
of 1968, 18 U.S.C § 2510, *et seq.* ("Title III"), governs the
interception of wire, oral and electronic communications by the
government and private parties.  Title III broadly prohibits all
wiretapping and electronic surveillance conducted by persons

other than law enforcement officials engaged in the investigation of specified crimes after obtaining a court order.  *See* 18 U.S.C. § 2511.  The statute excepts interceptions by employees of communications facilities whose normal course of employment would make necessary such interception ("the carrier exception"), personnel of the Federal Communications Commission in the normal course of employment, government agents securing foreign intelligence information, and parties to the communication who consent to the intercept.  *See* 18 U.S.C §§ 2511(2)&(3); S. Rep. No. 90-1097, at 38 (1968) reprinted in U.S.C.C.A.N. 2112, 2153-54.  Violating Title III is a crime.  18 U.S.C. § 2511(4). Violators are also civilly liable to persons whose communications they intercept or disclose.  18 U.S.C. § 2520.

   *A. Private Carrier Exception*

   The first issue the Court must address is whether the employees of Alltel were acting as government agents when they intercepted Hudson's cell phone calls.  Under the carrier exception of Title III, it is not unlawful for the employee of a provider of wire or electronic communication services, whose facilities are used in the transmission of wire or electronic communication, "to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the

7

provider of that service...." 18 U.S.C. § 2511(2)(a)(i).  A
carrier is defined under the statute as "any person engaged as a
common carrier for hire, in interstate or foreign communication
by wire or radio or interstate or foreign radio transmission of
energy".  *See* 18 U.S.C. § 2510(10); 47 U.S.C. 153(11).  Alltel
was a provider of communication services, and is a carrier as
that term is used in Title III.  It is evident, therefore, that
upon learning of the fraudulent activation scheme, Alltel had a
statutory right to monitor the calls made on the fraudulently
obtained phones.  If the Alltel employees were government agents,
however, they would not satisfy the carrier exception of Title
III, and their conduct would be judged under the standards of the
Fourth Amendment.

To determine whether a private party is acting as an
"instrument or agent" of the government, the Court considers "(1)
whether the Government knew or acquiesced in the intrusive
conduct; and (2) whether the private party intended to assist law
enforcement efforts or to further his own ends." *United States
v. Blocker*, 104 F.3d 720, 725 (5th Cir. 1997) (not deciding
government instrument or agent issue because inspection did not
intrude upon any reasonable expectation of privacy).

As the foregoing evidence makes clear, Alltel was not acting
as a government agent in this investigation.  First, Alltel
initiated the investigation on its own.  Davis testified that the

investigation began because Alltel's fraud specialists detected a
large number of fraudulent accounts being activated through an
Alltel call center.  Further, Alltel conducted the investigation
with the clear purpose of protecting its property.  Hudson's
alleged conspiracy involved using stolen credit card account
numbers and bank information to obtain cell phones and services
from Alltel.  The conspiracy caused Alltel direct harm, and
Alltel conducted the investigation to protect its financial
interests.  Davis testified that his responsibility was to try to
stop the financial losses to Alltel that resulted from Hudson's
scheme. *See McClelland v. McGrath*, 31 F.Supp. 2d 616, 619 (N.D.
Ill. 1998) (explaining that interceptions must be motivated by a
desire to protect the phone company, not to help law
enforcement).  In addition, there is no evidence that Alltel
communicated with any law enforcement agents during its
investigation.  Davis testified that he did not communicate with
law enforcement before March 10, 2004, the date that Alltel
decided to turn over its investigation to the Secret Service.
Agent Lavergne testified that the government was not aware of
Alltel's investigation until Davis contacted the Secret Service
on March 10, 2004.  Davis stated that once Alltel contacted law
enforcement, Alltel stopped all of its monitoring.  Because there
is no evidence that Alltel was acting in concert with the
government, the Court finds that Alltel was acting as a private

party and not as a government agent.  *See e.g., United States v. Paige*, 136 F.3d 1012, 1017-18 (5th Cir. 1998) (applying the *Blocker* test and finding that search of attic space by employees and owner of a private roofing company was a "purely private search [that] triggered no Fourth Amendment alarm.").

Defendant raised the argument in his brief that Alltel had contact with state authorities.  There was no evidence presented that Alltel had any communications with or acted at the direction of a state agency.  Accordingly, the Court rejects this argument.

B. *Government's Standing Argument*

The government argues that regardless of whether Alltel acted under the carrier exception, Hudson does not have standing to challenge Alltel's conduct.  The government, relying on Fourth Amendment jurisprudence, asserts that Hudson does not have standing because he had no reasonable expectation of privacy in the stolen property.  Hudson, however, asserts a statutory violation, not a constitutional violation.  As is demonstrated below, Title III protects wire communications from interception, regardless of any expectation of privacy.  Accordingly, the Court rejects the government's argument.

Title III prohibits the interception of wire and oral communications subject to stated exceptions.  *See* 18 U.S.C. §§ 2511, 2516 (excepting intercepts conducted by law enforcement officials engaged in the investigation of specified crimes after

10

obtaining a court order, government agents securing foreign intelligence information, employees of communications facilities and the FCC whose normal course of employment makes necessary such interception, and parties to the communication who consent to the intercept). Under the statute, a "wire communication" is

> any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of interstate or foreign communications.

18 U.S.C. § 2510(1). Telephone conversations are "wire communications" under Title III. *See Briggs v. American Air Filter Co.*, 630 F.2d 414, 417 (5th Cir. 1980); *see also United States v. Carrazana*, 921 F.2d 1557, 1562-63 (11th Cir. 1991)(Title III covers intercepting cell phone communications). "Oral communication" means "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication." 18 U.S.C. § 2510(2). The definition of oral communication, unlike the definition of wire communication, incorporates the principle that the person must have a reasonable expectation of privacy in the communication. Courts have interpreted this difference to signify that wire communications, unlike oral communications, are protected even in the absence of

11

a justified expectation of privacy.  *See Briggs*, 630 F.2d at 417
(comparing the statutory definitions of wire communication and
oral communication under Title III and concluding that
"interception...of wire communications is forbidden regardless of
the speaker's expectation of privacy"); *see also United States v.
Footman*, 215 F.3d 145, 155 n.12 (1st Cir. 2000)("Title III itself
explicitly considers that those engaged in oral communications
may have reduced privacy expectations and assumes that there are
protectable privacy interests in wire communications."); *Forsyth
v. Barr*, 19 F.3d 1527, 1535 n.14 (5th Cir. 1994)("Wire
communications, unlike oral communications, are protected against
interception by electronic, mechanical, and other devices
regardless of the speaker's expectation of privacy.") (citing
*Briggs*, 630 F.2d at 417).  Hudson's communications on the Alltel
telephone are wire communications and are protected under Title
III, irrespective of whether he had a reasonable expectation of
privacy.  Thus, Hudson has standing to assert that Alltel
violated Title III.

Hudson's standing is limited, however, to the intercepted
calls to which he was a party.  Title III allows any aggrieved
person to move to suppress the contents of intercepted oral and
wire communications, or evidence derived therefrom, obtained in
violation of the statute.  *See Investigation and Police Practice,
Electronic Surveillance,* 39 Geo. L.J. Ann. Rev. Crim. Proc. 140, 160

12

(2010).  Section 2515 imposes an evidentiary sanction to compel compliance with the other prohibitions of the chapter.  18 U.S.C. § 2515 ("Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial...if the disclosure of that information would be in violation of this chapter.").  This evidentiary sanction "must, of course, be read in light of section 2518(10)(1)...which defines the class entitled to make a motion to suppress."  S. Rep. No. 90-1097, at 38.  Section 2518(10)(1)(a) explains that "any aggrieved person...in any trial hearing or other proceeding in or before any court...may make a motion to suppress the contents of any intercepted wire or oral communication on the grounds that the communication was unlawfully intercepted."  18 U.S.C. § 2518(10)(1)(a).  Under the statute an aggrieved person is "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."  18 U.S.C. § 2510(11).  Generally, to establish standing the movant must show that (1) he was a party to the communication; (2) the wiretap efforts were directed at him; or (3) the interception took place on his premises.  *United States v. Faulkner*, 439 F.3d 1221, 1223 (10th Cir. 2006) (citing *United States v. Apple*, 915 F.2d 899, 905 (4th Cir. 1990).  Alltel intercepted Hudson's wire communications, and Hudson

13

asserts that the company did so unlawfully.  Hudson, therefore, has standing to make a motion to suppress the contents of those calls.  *See United States v. Kelley*, 140 F.3d 596, 604 n.7 (5th Cir. 1998)("[O]nly 'one who participated in the intercepted conversation or on whose premises the conversation occurred' ha[s] standing to challenge the fruits of an illegal wiretap.") (citing *United States v. Scasino*, 513 F.2d 47, 49-50 (5th Cir. 1975) (relying on *Alderman v. United States,* 394 US 165, 175 n.9 (1969)); *see also Electronic Surveillance,* 39 Geo. L.J. Ann. Rev. Crim. Proc. at 160 ("[T]o bring... a challenge [to the admission of evidence under Title III], one must have been a party to the illegally intercepted conversation") (citing *Alderman,* 394 US 165, 175 n.9 (1969)("Congress has provided only that an 'aggrieved person' may move to suppress the contents of a wire or oral communication intercepted in violation of the Act....[and]'aggrieved person'...should be construed in accordance with existent standing rules.")).

Hudson, however, does not have standing to move to suppress the contents of the calls that were intercepted by Alltel on twelve to fifteen different phones from September 2003 to January 20, 2004.  Hudson was not a party to these cell phone communications and he has not alleged that they took place on his premises.  Alltel's goal, in a broad sense, was to identify the perpetrators and scope of the conspiracy.  In light of the

instruction of the Supreme Court in *Alderman* to construe "aggrieved person" in accordance with existent standing rules, and the specific holding of the Fifth Circuit in *Scasino* that an "aggrieved person" is limited to participants in the conversations and persons on whose premises the conversation occurred, Hudson's role in the conspiracy is insufficient to give him standing to challenge the intercepted communications that occurred before January 20, 2004 under a theory that they were directed at him. *See United States v. Frink*, 328 Fed. App'x 183, 189 n.1 (4th Cir. 2009)(finding that a defendant who was not a party to the communication did not have standing to object to the recordings even when "the government's efforts might have been broadly directed at him in the sense that they were trying to gather evidence for the conspiracy"); *United States v. Gallo*, 863 F.2d 185, 192 (2d Cir. 1988)(holding that two defendants who were not named in the wiretap order and not parties to the conversations did not have standing to suppress the intercepted communications even though the party named in the order was their co-defendant in the case and all three participated in the racketeering scheme); *United States v. McDade*, 827 F.Supp. 1153, 1178-79 (E.D. Pa. 1993)(rejecting the defendant's "target theory" claim that a search directed at a conspiracy is directed at all the members of the conspiracy); *see also United States v. Martin*, 169 F.Supp. 2d 558, 564 (E.D. La. 2001) ("[O]ne does not become

an 'aggrieved person' under Title III solely by the introduction of damaging evidence."). Accordingly, Hudson has standing to challenge only the intercepted calls to which he was a party.

*C. Reasonableness of the Intercepts*

Hudson argues that the scope and duration of the intercepts was unreasonable. The government argues that the length of the taping was necessary because the alleged conspiracy was ongoing, involving at least twelve other individuals and multiple frauds.

The carrier exception is limited to "activity which is a necessary incident to the rendition of [the carrier's] service or to the protection of the rights or property of the provider of that service." 18 U.S.C. § 2511(2)(a)(i). The Fifth Circuit has held that this provision imposes a reasonableness requirement on carriers. *United States v. Clegg*, 509 F.2d 605, 613-14 (5th Cir. 1975) (noting the carrier exception does not contain a time limitation). Section 2511(2)(a)(i) does not articulate "a specific time limitation during which a justified intercept may legally continue." *United States v. Harvey*, 540 F.2d 1345, 1350-1 (8th Cir. 1976). Instead,

> [r]easonableness must be assessed under the facts of each case, including the scope of the monitoring, the hard evidence accumulated at a given time, and the additional information thus known by the communication carrier. To be admissible, evidence obtained through wire interception by telephone company officials must fall demonstrably within the narrow exception created by 18 U.S.C. § 2511(2)(a)(i).

16

*Id.* at 1352 n.9 (holding that "[t]he government met that burden in this case" and approving six-week limited intercept); *see also Clegg*, 509 F.2d at 613-14 (approving four-month wiretap that minimized interception of audible content of calls); *Bubis v. United States*, 384 F.2d 643, 648 (9th Cir. 1967) (rejecting three-month intercept that extended beyond purpose of protecting carrier); *United States v. McLaren*, 957 F.Supp. 215, 220 (M.D. Fla. 1997) (approving two-week taping of entire conversations).

The defendant, relying on one sentence of the Government's response to defendant's motion to quash the bill of information which states that Alltel "monitored the numerous conversations taking place over the stolen Alltel cellular telephones from January 1, 2003 through January 24, 2004"[3], asserts that the wiretap occurred for a period of over one year. There was no evidence presented at the suppression hearing to support this assertion. Davis testified that Alltel was not aware of the fraud until September of 2003. Lavergne also testified that there were no recordings before September of 2003. Accordingly, the Court rejects this argument.

Alltel intercepted and recorded telephone calls on phones involved in the conspiracy from September 2003 to March 12, 2004, but monitored Hudson's calls (on Robert Armstrong's phone) during

---

[3]     R. Doc. 48 at 2.

17

the shorter period from January 20, 2004 to March 12, 2004.
During the initial period of surveillance, Alltel intercepted
calls on approximately fifteen different unlawfully obtained cell
phones believed to be part of the same conspiracy.  Alltel
determined, however, that the users of most of these phones were
"end-users" and not the orchestrators of the conspiracy.  For the
reasons explained above, Hudson does not have standing to
suppress the intercepts of these communications.  It was not
until the end of January 2004 that Alltel identified the phone of
"Robert Armstrong" as one that would provide leads about the
identity of the individual running the scheme.  The monitoring
period relevant to Hudson's suppression motion, therefore, is
January 20, 2004 to March 12, 2004, a period of less than eight
weeks.

    Alltel recorded all of the calls made on the monitored cell
phones.  At the hearing, Robert Davis explained that Alltel
recorded the calls made on the cell phones onto compact discs,
and when the monitors came to work they downloaded and listened
to the previously recorded calls.  Davis testified that if a call
was not relevant, the monitor stopped listening.  In many "blue
box" cases, courts relied on the limited nature of the intercepts
to uphold their legality.  *See, e.g., Clegg*, 509 F.2d at 614 ("We
stress in so holding [allowing wiretap] that Hubbard's
investigation was so limited that there was minimal intercept of

the audible content of Clegg's telephone calls."). In those cases, however, a provider could detect the fraud and the identity of the perpetrator without recording the contents of the intercepted calls.[4] In contrast, because of Hudson's evasive practices, Alltel had to record the audible portion of the cell phone calls in order to identify him and the scope of the conspiracy. Hudson did not use his real name during the calls (Davis testified that the speaker identified himself as "Kelly", "Cali" or "Mozel" and reprimanded a caller who referred to him as Jamal), so that limiting the audible portion of the calls to the salutations was not a feasible method of minimization for the phone company. Further, service providers are not required to comply with the minimization requirements of section 2518(5) that are applicable to court-ordered intercepts. *United States v. McLaren*, 957 F.Supp. at 220 (finding "the requirement of 'minimization' and the other strictures imposed upon judicially

---

[4]     A "blue box" is a device that was used to place long distance calls by controlling the phone company's switching system, thereby circumventing the billing system. In *United States v. McLaren*, the Court explained that "[i]n order to build a case against a blue box defrauder, the telephone service provider does not need to ascertain the full content of the conversation during any of the fraudulently made calls. Rather, the service provider needs only to (1) identify the number being called in order to establish the call as a long distance or toll call; (2) establish that the calls were answered, since there is no charge for merely calling a long distance number; and (3) monitor only the salutations of the speakers in order to establish the precise identity of the illegal caller." 957 F.Supp. at 220 (citing *Clegg*, 509 F.2d at 608).

authorized wire taps" inapplicable to surveillance under section 2511(2)(a)(i)).

Moreover, the conspiracy was both large and expanding. Hudson continued to establish new accounts during the period of monitoring, and Davis testified that the conspiracy involved at least twelve members who established approximately sixty-five fraudulent telephone accounts and ordered 284 cell phones.  In *United States v. Brown*, the Fifth Circuit explained that "the government may reasonably intercept more calls....where the criminal enterprise under investigation is a large and sophisticated conspiracy, and the purpose of the intercept order is to learn the identities of conspirators and define the reach of the conspiracy".  303 F.3d 582, 604-5 (5th Cir. 2002) (upholding the district court's denial of the defendant's motion to suppress because it found that the government's interception was objectively reasonable)(citing *United States v. Hyde*, 574 F.2d 856, 869 (5th Cir. 1978) ("Large and sophisticated conspiracies may justify more electronic surveillance than a single act.")).  The size and evolving nature of the conspiracy made it reasonable for Alltel to engage in more extensive surveillance.

Hudson also argues that Alltel continued to intercept his phone calls after it had obtained enough information to prosecute him.  *See, e.g., Bubis v. United States*, 384 F.2d 643 (9th Cir.

20

1967)(holding that intercepts lasting three months after ample evidence had been secured was unreasonable where the phone company continued monitoring to gather evidence of a separate crime).  There is no evidence to support this assertion.  Indeed, the very reason Alltel turned the information from its investigation over to the government was because it was unable to identify the male on the phone he used.  Davis testified that when he composed the final report to send to law enforcement, Alltel had fully identified six members of the conspiracy but could not identify the male "ringleader".  Davis explained that at that point he thought that the best way to stop the losses to Alltel would be to turn over the information to law enforcement and rely on their investigative capabilities.  When Alltel suspended its investigation, it did not have information identifying Hudson.  Accordingly, the Court finds that Alltel did not continue its monitoring after it had sufficient evidence to prosecute Hudson.

Taking into account the less than two month duration of the monitoring of Hudson's calls, the effort to listen to the relevant calls only (though all calls were recorded), and the nature of the conspiracy, the Court finds that Alltel's intercept was reasonable.

## III. Conclusion

Because Alltel did not act as a government agent when it intercepted Hudson's communications and the duration of the intercept was reasonable due to the size and complexity of the conspiracy, the Court finds that Alltel's wiretap was legal under the carrier exception of Section 2511(2)(a)(i) of Title III. Accordingly, the Court DENIES Hudson's motion to suppress the contents of the communications Alltel recorded.

New Orleans, Louisiana, this _5th_ day of October, 2011.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

22